■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIE MACK, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Westchester County, rendered November 3, 1978, convicting him of assault in the second degree, upon his plea of guilty, and imposing sentence. Judgment affirmed. At about midnight on December 23, 1977, the defendant came home to find his wife in bed with another man and assaulted her by punching her in the eye. The next morning, December 24, defendant sexually assaulted his wife by forcing a foreign object into her vagina. At about 7:00 A.M. that morning, the police were called and responded to the parties' apartment in White Plains, New York. Mrs. Mack told the responding officers that she did not wish to press any charges against her husband at that time. Sometime later that morning, the defendant and his wife drove to Rye, New York. While there, defendant sexually assaulted her again by forcing foreign objects into the intimate parts of her body. The latter assault resulted in a referral of the matter by the Rye Police Department to the Sex Crimes Unit of the Westchester County Sheriff's Department. As a result of these attacks, the defendant's wife sustained serious physical injury to her eye and injuries to other parts of her body. A criminal action was commenced on December 27, 1977 when an accusatory instrument was filed against defendant in a local criminal court (CPL 1.20, subd 17). Thereafter, on March 23, 1978, a seven-count indictment was handed up charging the defendant with assault in the first degree, assault in the second degree (three counts) and criminal possession of a weapon in the fourth degree (three counts). On June 12, 1978 the defendant made an omnibus motion in which he sought, *inter alia,* dismissal of the indictment for failure to comply with the provisions of former subdivision 2 of section 812 of the Family Court Act. In the alternative, he requested a pretrial hearing to determine whether there had been compliance with the provisions of that statute. On July 24, 1978, the branch of defendant's motion relating to section 812 was denied. On September 15, 1978 defendant withdrew his previously entered plea of not guilty and pleaded guilty to the crime of assault in the second degree in satisfaction of the indictment. On November 3, 1978 he was sentenced as a prior felony offender to a term of imprisonment with a minimum of two years and a maximum of four years. The statute in issue is section 812 of the Family Court Act as it read at the time defendant's motion was made (L 1977, ch 449, § 1).* In substance, subdivision 1 of that statute gives the Family Court and the criminal courts concurrent jurisdiction over any proceeding involving enumerated acts of an assaultive nature "between spouses". Subdivision 2 of that section, at the time in issue, provided: "The presiding justice of each judicial department shall designate by rules of court the appropriate law enforcement official, who may be a probation officer, warrant officer, sheriff, police officer or any other law

---

* It has since been amended (L 1978, ch 628, § 3; ch 629, § 2).

enforcement official, to advise any petitioner or complainant bringing a proceeding under this section, before such proceeding is commenced, of the procedures available for the institution of family offense proceedings, including but not limited to the following: (a) That there is concurrent jurisdiction with respect to family offenses in both family court and the criminal courts; (b) That a choice of forum by a complainant or petitioner bars any subsequent proceeding in an alternative court for the same offense; (c) The legal, social and practical consequence of an adjudication by the family court and that an adjudication in family court is for the purpose of attempting to keep the family unit intact. Referrals for counseling, or counseling services, are available through probation for this purpose; (d) The legal, social and practical consequence of an adjudication by the criminal courts and that an adjudication in the criminal courts is for the purpose of punitive action against the offender." Defendant's motion to dismiss was based on his contention that, prior to the commencement of the criminal action, none of the designated law enforcement officials had given the complainant the advice set forth in the statute. CPL 210.45 (subd 5, par [b]) provides that the court may deny a motion to dismiss without conducting a hearing if "The motion is based upon the existence or occurrence of facts, and the moving papers do not contain sworn allegations supporting all the essential facts". In support of the motion, defendant's attorney averred that based upon a conversation he had had with the complainant, counsel had the "impression" that the admonition had not been given to her. There was no sworn allegation by the complainant that she had not been given the statutory instructions. On the other hand, the District Attorney stated that section 812 of the Family Court Act had been complied with. The court denied the motion stating: "The defendant sets forth no facts indicating failure to comply with [the] statute." The motion was properly denied. A mere "impression" is clearly insufficient to support the claim that there was no compliance with the statute. Moreover, the attorney's affirmation was not made sufficient by the allegation that counsel was told by the arresting officer that he had not advised the complainant of her options and the consequences of each. The statute imposes no such duty on the arresting officer particularly where, as here, he turned the complainant over to the Sex Crimes Unit. We note that, although the right to make the initial selection of the forum of litigation was personal to the complainant, her choice could adversely affect the ultimate consequences to the offender. Thus, the defendant could have raised by way of defense at trial the omission, if any, to advise the complainant of the available procedures. Nevertheless, he chose not to do so, and instead pleaded guilty. By his guilty plea, the defendant waived all nonjurisdictional defects (see *People v La Ruffa*, 40 AD2d 1022, affd 34 NY2d 242, remanded 419 US 959, affd on rearg 37 NY2d 58, cert den 423 US 917; *People v Cornell*, 50 AD2d 608; *People v Bogatin*, 48 AD2d 674; *People v Schiskey*, 39 AD2d 608). Mollen, P. J., Hopkins and Mangano, JJ., concur.

Titone, J., dissents and votes to hold the appeal in abeyance and remit the matter for a hearing in accordance with the following memorandum: The questions raised on appeal by defendant are (1) whether the failure of a designated "appropriate law enforcement official" to advise defendant's wife, pursuant to former subdivision 2 of section 812 of the Family Court Act (see L 1977, ch 449, § 1), as to her available choices of a forum in which she could seek redress of personal injuries sustained at his hands constitutes a jurisdictional defect, and (2) assuming the answer is in the affirmative, does the record before the court present a question of fact requiring a hearing as

to whether defendant's wife was properly informed of her options pursuant to such statute as it read at the time of the alleged assault upon her by defendant. Contrary to the position taken by the majority, I believe that the answers to both questions should be in the affirmative. Since a guilty plea waives all nonjurisdictional defects (*People v La Ruffa*, 40 AD2d 1022, affd 34 NY2d 242, remanded 419 US 959, affd on rearg 37 NY2d 58, cert den 423 US 917), and defendant pleaded guilty to assault in the second degree, it must be determined at the outset whether the failure of a responsible official or officials to inform a victimized spouse of her right to elect the forum in which all litigation should be conducted vitiates subsequent proceedings in either court on jurisdictional grounds. Generally, factors that should be considered in ascertaining whether a procedural infirmity is so gross that it constitutes a jurisdictional defect, are (1) the purpose of the procedural requirement allegedly breached, and (2) administrative means available to insure compliance with the procedural requirement. With respect to the procedural requirement, it is significant to note that chapter 449 of the Laws of 1977, enacted with the support of many women's organizations and groups, was designed to afford more effective relief to the "battered spouse". Proponents of the measure believed that the Family Court, which had exclusive jurisdiction of intra-family offenses up to that time, did not possess sufficient sanctions for abusive conduct. Under the prior law, commencement of criminal proceedings based on an intra-family offense was jurisdictionally defective and the matter was transferred to the Family Court pursuant to section 813 of the Family Court Act (*People v Johnson*, 20 NY2d 220; *People v Jones*, 59 AD2d 617). In his message approving chapter 449, Governor Carey made the following observation (NY Legis Ann, 1977, pp 175, 176): "Pursuant to the changes effected by this bill, a victim will now be permitted the option of proceeding in Family Court or in a criminal court. By giving criminal courts concurrent original jurisdiction over these family matters, this legislation now makes available the entire range of criminal sanctions which would have been applicable had the crime not occurred within a family or household. *Prior to making the selection of a court, the victim will be informed that a proceeding brought in Family Court will be for the purpose of attempting to keep the family unit together, while an action commenced in criminal court will be for the purpose of punishing the offender.*" (Emphasis supplied.) From the language employed in subdivision 2 of section 812 of the Family Court Act, as amended by section 1 of chapter 449 of the Laws of 1977, and the thrust of the Govenor's message of approval, it is manifest that the purpose of such law was to permit the battered spouse to exercise an informed election between the two courts depending upon whether her primary thought was to preserve the marriage or to punish the offending spouse for his or her brutal behavior. With respect to the legislative intent as it relates to the jurisdictional issue raised herein, it has been held, correctly I believe, that jurisdiction of a court to adjudicate a controversy rests on three essentials, namely, (1) jurisdiction of the subject matter, (2) jurisdiction of the parties, and (3) *jurisdiction to render the particular judgment in the particular case* (*State ex rel. Lambert v Flynn*, 348 Mo 525, 532). As a concomitant to the third essential, i.e., jurisdiction to render the particular judgment in a particular case, it is also true that where an element of jurisdiction depends on the power of the court under a public policy, such element cannot be waived or disregarded (cf. *State ex rel. Lambert v Flynn*, 348 Mo 525, 532, *supra*). Therefore, if a court cannot try a question except under particular conditions or when approached in the matter provided, *the law withholds*

*jurisdiction* unless such conditions exist or unless the court is approached in the manner provided (21 CJS, Courts, § 85; cf. *State ex rel. Lambert v Flynn,* 348 Mo 525, 532, *supra).* At first blush it may seem anomalous that in this instance the person asserting that the failure to inform the victimized spouse constitutes a fatal jurisdictional defect is the assailant husband and not the injured spouse. However, what seems evident from the subject statute is that the public policy established therein is directed not primarily for the benefit of the victim but rather to the future of the marriage, a relationship shared by both the victim and the assailant. A choice of courts necessarily affects the ultimate relief, and failure of the injured spouse to be able to exercise such right may produce results never intended by her. For example, assuming, without deciding, that the wife herein was not so informed, and yet wished to see defendant punished, nevertheless she may not have realized that his prior felony offender status would result in something she may not have wanted, namely his mandatory incarceration for a lengthy term. Moreover the failure to inform a complainant of the information contained in subdivision 2 of section 812 of the Family Court Act not only defeats the right of the injured spouse to decide as to the future course of the marriage, but also results in having the course of future proceedings vested solely under the unbridled discretion of the agency to whom the complaint is made, e.g., the District Attorney's office or the police department. Such latter result is implicitly proscribed by subdivision 3 of section 812, which impliedly assumes that the required information was conveyed to the injured spouse and then specifically forbids the official designated to impart such information from discouraging or preventing the injured spouse from initiating proceedings in the court of his or her choice. Thus I conclude that if the statutory conditions with respect to informing the injured spouse of her right to select the judicial forum were not complied with, Criminal Term would have had no power to dispose of this matter (cf. *State ex rel. Lambert v Flynn,* 348 Mo 525, 532, *supra).* With respect to administrative aspects of insuring compliance with the procedural requirements set forth in subdivision 2 of section 812 of the Family Court Act, judicial notice should be taken of subdivision 4 of the same statute, which specifically provides that the administrator of the State courts shall prescribe the form to implement subdivision 2 (see L 1977, ch 449, § 1; L 1978, ch 628, § 3). In connection with this aspect, the following statement contained in an article appearing in the New York State Bar Journal, December, 1978, by Jeffrey W. Allister and Sue Schiefer Levy, entitled "The Impact of the New Family Offense Legislation", is especially pertinent (50 NYS Bar J 648, 651): *"It is suggested that an Election of Forum form be prepared, including an explanation of those items in Family Court Act § 812(2), which would have to be acknowledged by any person wishing to proceed."* (Emphasis supplied.) Thus it is patently clear that under subdivision 4 of section 812, the Office of Court Administration has both the power and duty to promulgate a simple form which should be used to insure compliance with the requirements set forth in subdivision 2. I am also of the opinion that Criminal Term should have directed that a fact-finding hearing be held on the issue of whether the injured spouse was properly informed pursuant to the statute and made an unfettered choice, instead of denying defendant's application solely on the papers submitted thereon. The moving affirmation of defendant's attorney, as amplified by his affirmation supporting reargument, recites that in a telephone conversation defendant's spouse told him that she was not advised, *inter alia,* of her right of choice under subdivision 2 of section 812. Defense counsel also averred in a reply

affirmation that the arresting officer admitted he did not explain to Mrs. Mack the Family Court options in this case. In opposition the prosecution contended upon information and belief, based on the file of the matter in the District Attorney's office, and without sufficient elaboration, that "authorized officials" which "included members of the Westchester County Sheriff's Department Sex Crime Unit and the City of Rye Police Department", advised Mrs. Mack, *inter alia,* of the procedures available in each court. Based on such contradictory assertions, I believe a sharp issue of fact has been presented to warrant holding this appeal in abeyance until after a hearing is conducted and findings of fact rendered. In the event it is found after a hearing that the injured spouse was not properly informed, Criminal Term may then impart to her the statutory information and have her state her preference of forum for the record. Based on the record made on remand this court may, if she chose the Family Court, remit the matter to Criminal Term with a direction to transfer it to the Family Court, whereas if she chose the criminal court, this court should give her election *nunc pro tunc* effect and affirm the conviction. For the above reasons, I vote to dissent, remand the matter for a hearing and hold the appeal in abeyance.